The next matter, number 162250, Robert Jude Wilber v. Robert Curtis et al. May I proceed? Yes, you may. Thank you. Richard Latimer, Falmouth, Massachusetts, representing the plaintiff, Robert Jude Wilber. I would begin my comments by pointing out that this case is governed by the Supreme Court's opinion in Citizens United v. Federal Elections Commission. Two principles stand out there. One is that everyone has the right to engage in, quote, proliferating politics in any place where he has a right to be. Dr. Wilber was protesting. I'm sorry. You can proceed along these lines if you want. Excuse me? You can proceed along these lines if you want. But it strikes me that the key question here is whether there was probable cause to believe that a crime had been, was, or was about to be committed, and that that underlies all of the claims that you have made in this case. But before you get there, you started the case in state court. Is that correct? Well, let me address that question. Would you answer my question? There was no probable cause, very clearly. Beyond any dispute, there was no probable cause. Under Massachusetts law, we'll talk about the case of Commonwealth v. Feigenbaum. This case falls squarely within the rule of Commonwealth v. Feigenbaum. The reason I started with Citizens United had to do with the fact that Mr. Wilber was at all times exercising his right of free speech, on which, if there were any doubt at all, which there isn't, he gets the benefit of the doubt. Now, what Feigenbaum held was— The officer's response is going to be it wasn't about his speech. It was about his conduct. He was interfering with a clear-cutting crew that was acting within the scope of an easement that they properly could act within, and the officers asked him to leave the easement while the work was going on. They asked him a number of times. It was about his conduct in refusing to leave and in refusing to follow first their suggestions and then theirs. So why wouldn't a reasonable officer view this as having been about his conduct and not about his speech? I respectfully disagree. You think it's perfectly obvious? You think it's perfectly obvious from this record that it was not about his conduct? Oh, his conduct. What was his conduct? Going to the edge of a work site, protesting— I'm sorry. No, he didn't go to the edge. He went within the site. That is uncontested. What is uncontested is Dr. Wilber was doing less obstruction than Joel Feigenbaum did. Joel Feigenbaum was walking a public road— To one side, the disorderly conduct charge, and just go to this simple thing. The police are told that a construction crew using heavy machinery and chainsaws is going to be doing a clear-cut under utility lines under an easement, and they're going to put red tape around the zone. Can the police go and say, until they're done, no one else get inside that red tape? Because it might, we don't know, but it might be a safety hazard. Can the police do that? Please let me state what actually happened. The police—I think it's going to work better for you if you answer our questions that we ask of you. That's good, what you're here for today. Could the police do what I just asked? Could they say, no one come inside while that crew is doing their work? The police had no right to interfere with Dr. Wilber's protest of the damage being done to his land. He had the absolute right to protest that by any means that were nonviolent. Both officers testified that he engaged in none of the conducts, none of the behaviors— Go inside, forget about him. Could the police say, while they're there doing this sort of work, that they've told us it's dangerous, that they've told us stuff can shoot a number of feet, until they're done, no one step inside the red tape. Could the police do that? I think the logic of your argument is the police could not do that, that they had to allow people to go inside the red tape. Yes, that was the Faginbaum case. Again, Faginbaum wasn't interfering with a police officer's student case. Well, that's a different question. Yes. Faginbaum, but let's talk about interfering with people doing their job. Faginbaum blocked a public highway. But there's a different problem. Suppose I agree with you. Faginbaum says, was it disorderly conduct or disturbing the peace? I forget. Which is Faginbaum, which is the crime? Disorderly conduct? Yes. Okay, so suppose I agree with you. Because of Faginbaum, there was no cause to arrest for disorderly conduct. That is absolutely correct. Great, because of the protest. But there were other crimes that they allege were a basis for the arrest, one of which is interfering with the duties of a police officer, correct? Well, by law, he was not interfering with the duties of the police officer. The police officers were called. Their job was to prevent him, Dr. Willoughby, from being confrontational. They did that. He had not been confrontational. Both officers testified. They agreed he had not been confrontational. He engaged in none of the conducts, you know, violent conduct, you know. Let's go back to Judge Kayada's question. One of the ways that police officers might receive their duty to be carried out is by putting up a police line around the area. There was no police line. There was none. The red tape was, no, if we look at the facts of the case. You're just not letting me get the question out. Counsel, listen to the questions, please, before you try to override a question from a judge. For putting, if I put red tape around as a police officer, okay, and an actor then goes into that area, notwithstanding the officer has done that, could you be arrested for interfering with the duties of a police officer? The circumstances of this case, no. I suppose I'm not just, no. Not if you're on your own property, and they're trying to prevent you from going onto your own property. That's the difference here. If this were a public works project out in the public and there was a red tape, absolutely. But there was no red tape around the work area. They were tying little pieces of red tape on branches, maybe 40 feet or so to mark off where the work area was. There was no barrier for him to go into. Okay, maybe there's no barrier. But I thought it was undisputed. He was within the work area. Twice. Okay. And he had been told not to do that. In fact, the workers had asked for the police to come and be there because he had confronted them the prior couple of days. And that when he entered the area, the work stopped. The workers stopped what they were doing because, one assumes, of safety concerns. Again, we're dealing with the facts here. Let's get the correct facts. The work had stopped. The area was clear-cut. Attached to the briefings on addendum is a series of five photographs. Actually, his affidavit said he could still hear a machine operating on the site. He heard a chainsaw. And we see that chainsaw. He heard another machine. He saw someone clearing your client's own affidavit. And we see that chainsaw in operation in the lettering of this photograph, the man behind the bush. And right after the next photograph, that man stopped and he's walking across. And your client goes to sit on the stump of a tree that has just been cut. Isn't that correct? Yes. And he, at that point, refuses to leave the property. No, Your Honor. The police have asked him to leave this. He marked his own. Let me recite the actual facts. The actual facts are the work had stopped. Before you do that, answer my question. Did he go sit on the stump of a tree that had just been cut? Yes, he did that. Okay. Now, he did not do that before he was asked to leave. He was asked to leave while he was taking photographs of the damage being done to his land. The photographs that I supplied to the court clearly show he's standing between the two police officers off the work zone, ten feet off the work zone. You can see that freshly cut stump that he's taking about 15 feet away. Counsel. Then he's told to leave illegally. Counsel, stop it. I have told you, please, don't speak over a judge. I'm sorry. Judge Kayada was asking you a question. You know, we read debriefs very carefully. We spend a lot of time looking at them. We look at the record. There's a short period of time for oral argument. What happens at oral argument is it's your chance to hear how we've reacted to the briefs and what questions we have in our mind that you may not have convinced them on. So it's a wonderful opportunity for you to see what's concerning us and address that. And that's what we're trying to give you a chance to do. And so when I read the briefs here and looked at the record, it seemed to me this largely came down to one thing, which is a police officer asking someone to stand outside a 40-foot marked-off area until the crew has left and finished their work. He didn't restrain the client any other way. Your client could take pictures. Your client could yell whatever he wanted. And so I think you've got to convince us that the police officer had no ability, in terms of protecting safety, to tell people to stand outside that zone. Batchelder v. Allied Stores. He had no right to order Wilbur to leave from his own property when all Wilbur was doing was taking photographs and protesting. It's very clear under state law. He had no right to do that. Okay. Which case did you just cite? What was the case you just cited to us? Batchelder v. Allied Stores. Okay. 393 Bass. I did, but I don't think he wants to answer. That's okay. If it's in your brief, we'll get the citation. Thank you, counsel. Your time is up. May it please the Court. I'm Tom Donohue. I represent the defendant's appellees. The first issue I'd like to address is that we don't have facts in dispute in this case. The plaintiff attempts to manufacture one by a second affidavit. And by that second affidavit, which was drafted and filed after the officers filed for summary judgment, that second affidavit says that the work had stopped prior to him sitting on the stump and refusing to leave the active work site. And he does so in an attempt to say this isn't an active work site. However, that is contradicted by the plaintiff's deposition testimony at two separate depositions and is contradicted by the first affidavit that the plaintiff had filed, saying that it was extremely noisy when he went over to sit on the stump and that he had to yell actually at the workers to overcome the noise. So I would suggest to the Court that that's an improper way to avoid summary judgment, is to later on file an affidavit that contradicts an earlier affidavit and statements made at two separate depositions. Let me ask you, it did seem, isn't there evidence in the record that he was maintaining and informed the officer that it was his belief that NSTAR was exceeding its easement rights by clearing more than was reasonably necessary and the easement only entitled to clear such as was reasonably necessary? That's his testimony in some way. So for summary judgment, don't we have to assume that he at least made that assertion to the officer? Yes. And so here's what concerns me. If we have two people who have a civil dispute between them as to their respective property rights, for example, two people about where the line runs down through the property, how does the police officer come in and side for one side over the other? In other words, suppose he had hired the police officer to come in and work to make sure NSTAR didn't exceed its rights and then he told the officer, if they clear too much, that's exceeding the rights, so I want you to tell them to stop and if they don't, you arrest the NSTAR people. Why wouldn't that work? I think for the plaintiff, you would have to file in court and get some type of injunction over what he sees as overcutting. Exactly. That then leads me to why wasn't the remedy for this situation, this disagreement between the parties concerning the extent of NSTAR's rights, why isn't that something that should have been resolved by NSTAR going to court and getting an injunction that the police could enforce rather than just hiring the police to enforce their version of the contractual or property dispute between the parties? Because I think in this case what NSTAR was doing, they weren't arguing about what they were allowed to cut and what was permissible under the law. But he says they were. I don't think that's what he says. I think what he says is that he had a dispute with NSTAR about what should be cut. In what NSTAR, they only hired the police to keep the plaintiff away from them to keep them out of the act of cutting. So I don't think that it's the police in this case were asked to arbitrate or decide to come to some kind of civil dispute about who's right or wrong about the cutting. That's right. It goes down to a single tree that's not under the lines that is not a high-growing tree. I think that's the focus of this. And you've got a single tree there and he's saying you can't cut that under your easement rights. NSTAR says we read the easement rights to say we can cut it. He says no you can't. They say we can. So they say we're going to go hire an officer. The officer's going to then tell him stand back while we cut it and we'll arrest him if he keeps us from cutting it. That's kind of a nifty way to resolve the property dispute de facto in your favor. And if NSTAR could do that, why couldn't he get his own officer who would come in and say don't cut that tree? Because that's not what the police were asked to do in this case. I understand that the hypothetical respectfully is just a different situation here. Here the police are just asked to keep it safe. They're not asked to arbitrate in any way who's right or wrong about the scope of the cutting. I think the plaintiff does have a separate civil suit against that.  So if they were brought in to keep safe the site for the cutting down of the tree, same result would be fine to arrest the person who tries to interfere to stop the tree even though he contests they had no right to cut down the tree. That doesn't mean, I mean, it seems like the logic of your position has to be it's interfering with the police officer to get in the way of the police officers trying to keep an area safe. Is that your view? Is that what Massachusetts law permits? I think in this situation Massachusetts law is if there's probable cause for a crime. The crime is interfering with the duty of a police officer, correct? Well, this crime. That's a crime that you argue to us that we can find on. That's correct, Your Honor. Okay, so what are the elements of that crime and why was it violated here? It's violated here because the police have the authority to keep somebody out of an active, dangerous work zone. And in this case it was violated when the officers gave him, asked him nicely, according to the undisputed facts, three times, please leave this dangerous active work zone, in so many words, or we'll have to place you under arrest. And that would be just as true, just to be clear, that's just as true in the example that Judge Coyote gave you. I have a chainsaw and I'm going to cut down a tree. Not necessarily. Well, let him answer that. What's your answer to that question? If you could just please ask it again, Your Honor. Yeah, there's a tree. There's an easement. NSERW wants to cut down the tree. They've hired a police officer to keep the work safe site. They're going to use a chainsaw. Wilbur comes in and says, you can't cut down that tree, that's my easement. They say, please leave. We're about to cut down the tree, we'd like to keep the area safe. He says, I'm not leaving. Can you be arrested for interfering with the duties of a police officer? Is the tree within the easement? Yes. That's my understanding of the law, Your Honor, is that there would be probable cause for interfering with a police officer when the police have a reasonable belief that this is interfering or in some way dangerous. It wasn't that the police were trying in any way to decide what trees should be cut and what couldn't. It's just that they're trying to keep it safe. In the plaintiff's own testimony, he sits down within 12 feet of a person working on a chainsaw, and he's within 80 to 100 feet of, I think it's called a hydroax, a large heavy machinery that can throw things 50 plus feet. See, there are two ways. The problem I think you have is there are two ways to keep it safe. One is to move him away from the tree so when they cut it, he isn't injured. The other is to tell them not to cut it while he's standing near the tree. So you need to start out with some presumption that it's clear that they can cut down the tree. Otherwise, you've got the officer in the position of sitting there like a judge in a civil dispute deciding property rights. Under the facts of this case, the tree was already cut. There are no facts, there is no evidence that he was protesting any certain or specific tree. He came back later after making calls and sending e-mails, according to him, he came back and saw that this tree was cut and sat down on that tree within the work zone. There is no evidence in the record that there was any kind of dispute about specific trees or specific property. And the officers, had that been the dispute, should have been given fair notice that the dispute was, as my colleagues have characterized it. But in their view, that was not what this dispute was about. That's correct, Your Honor. The dispute, and it's undisputed evidence in the record, is that just in general he was upset about the clear cutting in scope. Nothing specific about... Why does that matter that I don't understand why that matters? Because, so in general, the officers knew... I mean, it doesn't mean you lose. I'm just trying to say what is the significance of whether they understood him to be generally saying, you're interfering with my easement, or specifically, you're interfering with my easement in this way. Same point, isn't it? Well, under the hypothetical about a tree, if he's arguing about whether a tree should come down or not, I mean, that certainly puts the officers in a different position. Well, they said they're cutting too much in this area. That's specific. I want them not to be cutting as much as they are. You seem to be letting them cut whenever they want. I don't want that to happen. You still say, look, we're trying to keep the safe site, the space site, safe. So I don't understand why that matters very much. It seems like an odd thing for Massachusetts law to turn on, whether the nature of the assertion about the interference with the easement right is specific or general. I think the police have zero opinion. No way. And certainly there's none in the record about whether they agree or disagree with either side. It's just the safety element of he is sitting near heavy machinery or in the vicinity. See, I think the force of the question is something like, all of us can imagine situations in which the police reasonably are allowed to set up secure zones that people can't enter. And when people enter those zones, it seems plausible to think you're interfering with the duties of a police officer. We can also all imagine circumstances in which it seems unreasonable for the police to just establish a cordoned off area that no one can get in. And what's difficult is, which of these two is this? Because it's someone else's property. He has a right to be there as an easement to. They're now ousting him from it. And was it reasonable for them to oust him from it? Now, you might say under qualified immunity, at least it was reasonable for them to think it was reasonable to do so. End of story. But I think that's the, at least to me, that's the force of the question to you. I think that's a broader, certainly a broader factual circumstance in legal proposition than what these officers faced when they were there to make sure that somebody was safely away from the workers coming through the work zone. Thank you, Your Honor. Thank you. Thank you both.